# 10 CIV 8565

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TEKOA DA SILVA, on behalf of himself
and all others similarly situated,

                     Plaintiff,

    vs.

JPMORGAN CHASE & CO., J.P.
MORGAN CLEARING CORP., J.P.
MORGAN SECURITIES INC., J.P.
MORGAN FUTURES INC., HSBC
HOLDINGS PLC, HSBC SECURITIES
(USA) INC., and HSBC BANK USA,
NATIONAL ASSOCIATION,

                  Defendants,

---

Case No. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**



RECEIVED
NOV 12 2010
U.S.D.C. S.D. N.Y.
CASHIERS

---

Plaintiff Tekoa Da Silva, on behalf of himself and all others similarly situated, brings this

action for damages against JPMorgan Chase & Co., J.P. Morgan Clearing Corp.; J.P. Morgan

Securities Inc.; J.P. Morgan Futures Inc. (collectively, "JPMorgan"); HSBC Holdings PLC; HSBC

Securities (USA) Inc.; and HSBC Bank USA, National Association (collectively, "HSBC"), for

violations of the Section 22(a)(1) of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 25(a)(1),

and Section 1 of the Sherman Act, 15 U.S.C. § 1.  Plaintiff alleges:

## NATURE OF CLAIM

1.      This action arises from defendants' conspiracy to intentionally and unlawfully

suppress and manipulate the price of Commodity Exchange, Inc. ("COMEX") silver futures and

options contracts between at least June 1, 2008 through March 31, 2010 ("Class Period"), in

violation of Section 22(a)(1) of the CEA, and Section 1 of the Sherman Act, 15 U.S.C. § 1.

1

2.      During the Class Period, the defendants engaged in a scheme to manipulate and suppress the market for COMEX silver futures and options contracts. In connection with its acquisition of Bear Stearns & Co., Inc. ("Bear Stearns") in March 2008, defendant JPMorgan acquired massive short positions in the silver futures market. Thereafter, JPMorgan, with HSBC, artificially depressed the price of silver dramatically downward. The conspiracy and scheme was enormously successful, netting the defendants substantial illegal profits.

3.      The conspiracy and scheme has been corroborated by a 40-year industry veteran and former employee of Goldman Sachs (the "Informant") who was told by representatives of the defendants about the conspiracy and scheme. The Informant has stated that he had been told first hand by traders at JPMorgan that JPMorgan manipulates the silver market. The JPMorgan traders would brag to the Informant about how much money they were making as a result of such manipulation.

4.      The Informant reported the defendants' activities to the U.S. Commodity Futures Trading Commission ("CFTC"), which has opened an investigation into the manipulation of the silver market. On October 26, 2010, CFTC Commissioner Bart Chilton announced that there have been "violations of the Commodity Exchange Act in the silver market." Specifically, Commissioner Chilton concluded, "[T]here have been fraudulent efforts to persuade and deviously control" prices in the silver market, which "should be prosecuted."

5.      In addition to the CFTC, the Antitrust Division of the United States Department of Justice is conducting a criminal investigation into the manipulative activities of defendants in the silver market.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §

15(a) and 26, Section 22 of the CEA, 7 U.S.C. §25, and 28 U.S.C. §§ 1331 and 1337.

7.      Venue is proper in this district pursuant to Sections 4(a) and 12 of the Clayton Act, 15

U.S.C. §§ 15 and 22, 7 U.S.C. § 25(d) and 28 U.S.C. § 1391 (b)-(d).  Almost all of the defendants

are headquartered in this district, all defendants transact business in this district, and Plaintiff's

claims arose in part in this district.  The interstate trade and commerce described herein was carried

out, in part, within this district, and unlawful acts done in violation of the Sherman Act and

Commodity Exchange Act occurred within this district.

8.      This Court has *in personam* jurisdiction over each of the defendants because, *inter*

*alia*, each defendant: (a) transacted business in the United States, including in this District; (b) had

substantial aggregate contacts with the United States as a whole and in this District; and/or (c) was

engaged in an illegal conspiracy that was directed at, and had the intended effect of causing injury

to, persons and entities residing in, located in, or doing business throughout the United States,

including in this District.

## PARTIES

### Plaintiff

9.      Tekoa Da Silva ("Da Silva") is a resident of Massachusetts.  During

the Class Period, Da Silva traded COMEX silver futures and options contracts, and was injured as a

result of defendants' anticompetitive acts and market manipulation activities described in this

complaint.

**Defendants**

10.     Defendant JPMorgan Chase & Co. is a Delaware financial holding company with its principal place of business in New York, New York.  JPMorgan Chase & Co. is a leading global financial services firm and one of the largest banking institutions in the United States.

11.     Defendant J.P. Morgan Clearing Corp. ("JPMC"), formerly known as Bear, Stearns Securities Corp., is a Delaware corporation with its corporate offices in Brooklyn, New York.  JPMC is a subsidiary of J.P. Morgan Securities Inc. which is a wholly owned subsidiary of JPMorgan Chase & Co.  JPMC is a registered Futures Commission Merchant with the CFTC.

12.     Defendant J.P. Morgan Securities Inc. ("JPMS") is a Delaware corporation with its principal place of business in New York, New York.  JPMS is a wholly owned subsidiary of JPMorgan Chase & Co.  JPMS, through JPMC, provides securities and futures clearing, customer financing, securities lending and related services.

13.     Defendant J.P. Morgan Futures Inc. ("JPMFI") is a Delaware corporation with its principal place of business in New York, New York.  JPMFI is a U.S. Futures Commission Merchant and wholly owned subsidiary of JPMorgan Chase & Co.  JPMFI provides research, sales, execution and clearing services in futures and options across fixed income, equity, foreign exchange and commodity asset classes.  JPMFI holds the U.S. accounts of JPMorgan Chase's global futures and options business customers.

14.     Defendant HSBC Holdings plc ("HSBC Holdings") is a United Kingdom public limited company with its corporate headquarters in London, England.  As of 2009, HSBC Holdings was the world's largest banking group and the world's sixth largest company according to Forbes Magazine.

15.     Defendant HSBC Securities (USA) Inc. ("HSBC USA") is a Delaware corporation with a corporate office located in New York, New York.  HSBC USA is a wholly owned subsidiary of HSBC Markets (USA) Inc. whose ultimate parent is HSBC Holdings plc.  HSBC USA is a registered broker-dealer of securities under the Securities Exchange Act of 1934 and is a registered Futures Commission Merchant with the CFTC.

16.     Defendant HSBC Bank USA, National Association ("HSBC NA") is a Texas company with an office in Wilmington, Delaware.

### UNNAMED CO-CONSPIRATORS

17.     Various other entities and individuals not named as defendants in this complaint participated as co-conspirators in the acts complained of, and performed acts and made statements which aided and abetted and were in furtherance of the unlawful conduct alleged herein.

### THE RELEVANT MARKET

18.     The relevant market, which was the target of defendants' anticompetitive and unlawful scheme, is COMEX silver futures and options contracts.

19.     On the COMEX, contract rollover occurs each month when a futures contract holder exchanges (rolls over) an expiring contract position for a contract position which expires at a later date.

20.     On the COMEX, the expiration date of an options contract, or "Options Expiry," is the day on which an options contract is no longer valid and therefore, ceases to exist.

## FACTUAL ALLEGATIONS

21.     The silver futures market is a thinly traded market.  The relatively sparse number of silver futures contracts regularly traded on COMEX enabled the defendants to manipulate the price of silver futures and options contracts by flooding the market with a disproportionate number of contracts.

22.     The market for COMEX silver futures and options contracts is highly concentrated with very few large banks controlling a large number of futures and options contracts.  As an example, in August 2008, defendants JPMorgan and HSBC controlled over 85% of the commercial net short positions in COMEX silver futures contracts and 25% of all open interest short positions.

23.     In March 2008, it was announced that JPMorgan would acquire Bear Stearns.  Bear Stearns had amassed a significant short position in COMEX silver futures and options contracts.  In fact, Bear Stearns' bearish bets on silver futures contracts were so large, that, at the time of JPMorgan's purchase of Bear Stearns, commentators suggested that the Federal Reserve helped orchestrate a bailout of Bear Stearns because Bear Stearns was on the verge of having to cover its silver short positions.  Although JPMorgan's acquisition of Bear Stearns was announced in March 2008, the transaction did not close until June 1, 2008.

24.     Once JPMorgan acquired Bear Stearns' commodities portfolio, it determined that it would further acquire massive short positions in the silver market and did in fact substantially increase its short positions.  Defendants have consistently maintained their massive short positions at critical times throughout the Class Period, controlling a significant percentage of open interest positions in the silver market.  Together, JPMorgan and HSBC controlled 96% of all precious metals derivative contracts excluding those for gold .

25.     Defendants have maintained a market share in excess of 90% of all precious metals derivative contracts, excluding gold, throughout the Class Period.

26.     In September 2008, the CFTC commenced an investigation into manipulation in the silver market after receiving numerous communications alleging that silver futures prices were being manipulated downward.

27.     In November 2009, the Informant contacted the CFTC Enforcement Division and reported defendants' illegal conspiracy to manipulate and suppress the prices of COMEX silver futures and options contracts.

28.     In his communications with the CFTC, the Informant described how JPMorgan silver traders communicated with market participants in advance of their manipulation, so that they, along with other traders, could reap enormous profits by artificially and unlawfully suppressing and manipulating the price of COMEX silver futures and options contracts.

29.     For example, in a January 26, 2010 email from the Informant to representatives of the CFTC, including Commissioner Chilton, the Informant stated:

> I thought you might be interested in looking into the silver trading today.  It was a good example of how a single seller, when they hold such a concentrated position in the very small silver market, can instigate a selloff at will.
>
> The events trade to a regular pattern and we see orchestrated selling occur 100% of the time at options expiry, contract rollover, non-farm payrolls (no matter if the news is bullish or bearish), and in a lesser way at the daily silver fix.

30.     According to the Informant, JPMorgan conspired with HSBC and other co-Conspirators,  prompting them to join JPMorgan's artificial suppression and manipulation of the price of COMEX silver futures and options contracts by flooding the market with short positions.

31.    The communications among defendants was done at least on a monthly basis on or around the dates of certain key events, including: the United States Department of Labor's issuance of non-farm payroll reports, which are released during the first week of each month; at the time of Options Expiry on the last four business days of each month, and; during COMEX silver futures contract roll-over.

32.    Specifically, the Informant explained "how there are routine market manipulations at the time of [Option Expiry], non-farm payroll data releases, and COMEX contract rollover, as well as ad-hoc events."

33.    Additionally, the Informant described manipulative acts that defendants employed on a daily basis.  During certain times of the day (typically when trading volume on the COMEX is light), defendants rapidly dumped large numbers of COMEX silver futures contracts at or around the same suppressed price.  It was understood among defendants and their co-conspirators that the price of these contracts would set the direction of silver futures contracts prices for that day. As the Informant explained in an email to Eliud Ramirez, Senior Investigator for the CFTC's Enforcement Division, dated January 26, 2010 (the same email described above):

> As an example, if you look at the trades just before the pit open today you will see around 1,500 contracts sell at once where the bids were tiny by comparison in the fives and tens.  This has the immediate effect of gaining $2,500 per contract on the short positions against the long holders, who lose that in moments and likely were stopped out.

34.    In a subsequent email to Ramirez, dated February 3, 2010, the Informant told the CFTC that defendants intended to depress the prices of COMEX silver futures and options contracts two days later, at or around the time of the announcement of the non-farm payroll report.  The Informant then predicted how the manipulation would play out in an email:

Thought it may be helpful to your investigation if I gave
you the heads up for a manipulative event signaled for
Friday 5th Feb.  The non-farm payrolls number will be
announced at 8.30 ET.  There will be one of two scenarios
occurring, and both will result in silver (and gold) being
taken down with a wave of short selling designed to take
out obvious support levels and trip stops below . . . it is an
example of just how easy it is to manipulate a market if a
concentrated position is allowed by a very small group of
traders.

Scenario 1.    The news is bad (employment is worse).  This will
have a bullish effect on gold and silver as the U.S. dollar weakens
and the precious metals draw bids, spiking them higher.  This will
be sold into within a very short time (1-5 mins) with thousands of
new short contracts being added, overcoming any new bids and
spiking the precious metals down hard, targeting key support
levels.

Scenario 2.    The news is good (employment is better than expected).
This will result in a massive short position being
instigated almost immediately with no move up.  This will not
initially be liquidation of long positions but will result in stops
being triggered, again targeting key support levels.

Both scenarios will spell an attempt by the two main short holders
[JPMorgan and HSBC] to illegally drive the market down and reap
very large profits.  Locals such as myself will be "invited" on
board which will further add downward pressure.
Only if a market is manipulated could this possibly occur.

35.     On February 5, 2010, the Informant again emailed the CFTC to discuss a

manipulation that was taking place:

> If you get this in a timely manner, with silver at 15.330 post
> data, I would suggest you look at who is adding short
> contracts in the silver contract while gold still rises after
> [non-farm payroll] data. It is undoubtedly the concentrated
> short who has "walked silver down" since Wednesday,
> putting large blocks in the way of bids. This is clear
> manipulation as the long holders who have been liquidated
> are matched by new short selling as open interest is rising
> during the decline.
>
> There should be no reason for this to be occurring other
> than controlling silver's rise. There is an intent to drive
> silver through the 15 level stops before buying them back
> after flushing out the long holders.

36.     Again, on February 5, 2010, the Informant emailed Ramirez "to confirm that

the silver manipulation was a great success and played out EXACTLY to plan as predicted."

37.     The Informant added, "[h]ow would this [be] possible if the silver market

was not in the full control of [JPMorgan and HSBC]...I hope you took note of how and who added

the short sales (I certainly have a copy) and I am certain you will find it is the same concentrated

shorts [JPMorgan and HSBC] who have been in full control since [JPMorgan] took over the Bear

Stearns position."

38.     In March 2010, the Informant went public with his allegations and

revealed his emails to the CFTC predicting certain market movements.

39.     After March 2010 defendants began to unwind their massive short positions. As

reflected in the CFTC Bank Participation reports, the net short position of silver futures held by

commercial banks, of which defendants comprise the vast majority, have been reduced by more than

30% since March 2010.

10

40.     As defendants' short positions in COMEX silver futures contracts have decreased, the price of silver has risen dramatically.  Silver has gained 40 percent this year, touching $24.78 an ounce on November 1, its highest level in 30 years.

41.     According to an October 27, 2010 article published in the *Wall Street Journal*, the CFTC's enforcement staff has circulated a packet of information to CFTC lawyers and commissioners outlining some of its findings in the silver probe, including documents that could suggest there have been attempts to manipulate prices.

42.     According to the same article, CFTC lawyers have interviewed employees of JPMorgan in its metals-trading business as well as industry traders, commodity executives, experts and employees of other metals-trading firms.

43.     The article also cites a CFTC weekly report for October 19, the most recent period, showing that fewer than four market players hold 24.3% of all net bearish bets in the silver market.  Importantly, relying on silver traders and a person close to the investigation, the article confirms that defendants JPMorgan and HSBC are among those market participants.

44.     On October 26, 2010, CFTC Commissioner Bart Chilton announced that there have been "violations of the Commodity Exchange Act in the silver market."  Specifically, Commissioner Chilton concluded, "[t]here have been fraudulent efforts persuade and deviously control" prices in the silver market, which "should be prosecuted."  Commissioner Chilton indicated that the CFTC investigation was continuing and added that he was "hopeful that the agency will speak publicly about the investigation in the very near future."

### Other Factors Supporting the Conspiracy Alleged Herein

45.     There are various structural and other market characteristics of the COMEX silver futures and options contracts market which make it susceptible to the conspiracy and manipulative activities that are alleged in this complaint.

46.     COMEX silver futures and options contracts are interchangeable and highly standardized. Indeed, the COMEX specifies the terms of each contract, including the trading units, price quotation, trading hours, trading months, minimum and maximum price fluctuations and margin requirements. When products offered are viewed as interchangeable by market participants, it is easier to unlawfully agree on the price for the product in question, and it is easier to effectively monitor agreed-upon prices.

47.     Defendants specifically intended to manipulate the price of COMEX silver futures and options contracts during the Class Period. Defendants consistently profited from the artificially lower or suppressed COMEX silver futures prices because, throughout the Class Period, they maintained significant short positions in COMEX silver futures and options contracts.

48.     Upon information and belief, a significant portion of defendants' short positions in the COMEX silver futures contracts were acquired through naked short selling, that is, defendants would contract to sell in the future silver which they did not own or had made no provisions to borrow. Such naked short selling, unconstrained by the actual amount of silver owned or available to the short seller, enabled defendants to more effectively suppress and manipulate COMEX silver futures and options contracts during the Class Period.

49.     Defendants are members of various industry trade associations such as the Futures Industry Association ("FIA"), the Futures and Options Association ("FOA") and the London Bullion Market Association ("LBMA"), and attended meetings of these associations together.

50.     The FIA's board of directors includes the managing director and global co-head of JPFMI's futures and options and Over the Counter clearing, and Robert T. Cox, the managing director and head of futures of HSBC USA.  Richard Berliand, the chairman of JPMorgan Futures and Options and head of JP Morgan-Bear Stearn's prime brokerage business, serves as a special advisor to the board.  As part of FIA, defendants participate in the annual Futures & Options Expo, the FIA/OIC Investor Education Day, the International Derivatives Expo, and other events and meetings.

51.     With regard to the FOA, an industry association for firms and institutions carrying on business in futures, options and other derivatives or which use such products in their business, defendants participate in annual events and conferences such as International Derivatives Week.  In addition, Richard Berliand of JPMFI serves as a special advisor to FOA's Board.

52.     Both JP Morgan Chase and HSBC NA are also members of the LBMA, the London-based trade association that represents the wholesale gold and silver bullion market in London.

53.     Each of the defendants would have taken enormous short positions only if they knew beforehand and were confident that the other defendants would support it and take similar short positions in the market for COMEX silver futures and options contracts.  Absent their collusion, and prior knowledge, it would not be in each of the defendant's independent economic self-interest to take such enormous short positions.

54.     Prior to the conspiracy to manipulate the silver market that is alleged in this complaint, the silver market had enjoyed remarkable stability for nearly 20 years.  Between the period 1984 through early 2008, the price of silver remained very stable.  However, in early 2008, the price of silver became more volatile, and, consistent with the defendants' massive short

13

positions, fell into precipitous decline.  Such pricing behavior is consistent with the conspiracy alleged herein and supports the acts of conspiracy and manipulation alleged herein.

## CLASS ACTION ALLEGATIONS

55.    Plaintiff brings this action as a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and others similarly situated.  The Class is defined as follows:

> All persons or entities other than defendants and their employees, affiliates, parents, subsidiaries or co-conspirators who transacted in COMEX silver futures or options contracts between June 1, 2008 through March 31, 2010 (the "Class").

56.    The Class is so numerous that joinder of all members is impracticable. While the exact number of the class members is unknown to Plaintiff at this time, Plaintiff is informed and believes that at least thousands of geographically dispersed class members traded COMEX silver futures and options contracts during the Class Period.

57.    Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff and members of the class sustained damages arising out of defendants' common course of conduct in violation of law as complained here.  The injuries and damages of each member of the Class were directly caused by defendants' wrongful conduct in violation of law as alleged here.

58.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation, including commodity manipulation and antitrust class action litigation.

59.    Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting solely individual members of the class.  Among the questions of law and fact common to the class are:

(a)   whether defendants conspired with others to artificially depress and

manipulate the price of COMEX silver futures and options contracts in violation

of the Sherman Act;

(b)   whether defendants' conduct manipulated and suppressed

the prices of COMEX silver futures and options contracts is violative of the

CEA;

(c)   whether defendants' conduct had an anticompetitive and

manipulative effect on the prices of COMEX silver futures and options

contracts purchased or sold by Plaintiff and the Class during the Class Period;

(d)   whether defendants' conduct injured Plaintiff and members of the Class; and

(e)   the appropriate measure of damages, under the CEA and federal

antitrust laws, sustained by Plaintiff and other members of the Class as a result

of defendants' unlawful activities.

60.   A class action is superior to other available methods for the fair and

efficient adjudication of this controversy because joinder of all Class members is impracticable.  The

prosecution of separate actions by individual members of the Class would impose heavy burdens

upon the courts and defendants and would create a risk of inconsistent or varying adjudications of

the questions of law and fact common to the class.  A class action, on the other hand, would achieve

substantial economies of time, effort and expense, and would assure uniformity of decision as to

persons similarly situated without sacrificing procedural fairness or bringing about other undesirable

results.

61.     The interest of members of the class in individually controlling the

prosecution of separate actions is theoretical rather than practical.  The Class has a high degree of

cohesion, and prosecution of the action through representatives would be unobjectionable.  The

amounts at stake for Class members, which are substantial in the aggregate, are not great enough

individually to enable them to maintain separate suits against defendants.  Plaintiff does not

anticipate any difficulty in the management of this action as a class action.

**EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT**

62.     Defendants actively and fraudulently concealed the existence of, and their

participation in, the conspiracy and manipulative conduct alleged above.  As a result of these acts of

concealment, and secret nature of the defendants' conspiracy and unlawful manipulation scheme,

neither Plaintiff, nor the Class members had knowledge of the violations alleged here until March

23, 2010 when the Informant disclosed the existence of the conspiracy and manipulative scheme

alleged in this complaint.  This complaint against defendants was filed thereafter, well within the

statutes of limitations applicable to claims under both the Commodity Exchange Act and the

Sherman Act.

63.     Defendants engaged in a successful and illegal conspiracy and manipulation of the

silver futures and options contract market that, by its nature, was inherently self-concealing.

64.     Defendants employed deceptive practices and techniques to avoid detection

of, and to fraudulently conceal, their contract, combination or conspiracy.  Because of this, Plaintiff

and the Class members could not have discovered the alleged contract, combination or conspiracy

and manipulative activities at an earlier date by the exercise of reasonable diligence, which they did

exercise. Defendants fraudulently concealed the contract, combination or conspiracy alleged here by

various means and methods, including, but not limited to, secret meetings and surreptitious communications.

65.     Because of the secret nature of the defendants' conduct, Plaintiff and members of the Class were lulled into believing that the COMEX silver futures and options contracts market was a competitive market, and the prices at which such contracts traded, were the result of market conditions, and not the defendants' collusive and manipulative activities.

66.     The affirmative actions of the defendants alleged here were wrongfully concealed and carried out in a manner that precluded detection.

67.     By virtue of the fraudulent concealment by defendants, the running of any statute of limitations has been tolled and suspended with respect to any claims that Plaintiff and the Class members have as a result of the unlawful contract, combination or conspiracy alleged in this complaint.

## COUNT ONE

## <u>VIOLATION OF COMMODITY EXCHANGE ACT, 7 U.S.C. § 25</u>

68.     Plaintiff incorporates by reference the preceding allegations as if they were fully set forth.

69.     Plaintiff and members of the Class bought or sold COMEX silver futures contracts and/or purchased or sold options contracts during the Class Period at prices that were made artificial by defendants' unlawful activities and were injured as a result of defendants' manipulation and suppression of the prices of those contracts.

70.     Defendants' activities constitute manipulation of the prices of COMEX silver futures and options contracts during the Class Period in violation of Sections 9(a) and 22(a) of the CEA, 7 U.S.C. §§ 13(a), 25(a).

71.     Defendants are liable to Plaintiff and members of the Class for the damages the members of the Class sustained as a result of Defendants' CEA violations.

## COUNT TWO

## AIDING AND ABETTING VIOLATIONS OF
## COMMODITY EXCHANGE ACT, 7 U.S.C. § 25

72.     Plaintiff incorporates by reference the preceding allegations as if they were fully set forth.

73.     Defendants knowingly aided, abetted, counseled, induced, and/or procured the violations of the CEA alleged herein.  Defendants did so knowing of each other's manipulation and suppression of COMEX silver futures and options contract prices, and willfully intended to assist these manipulations to unlawfully cause the price of COMEX silver futures and options contracts to be suppressed or to otherwise reach artificial levels during the Class Period, in violation of Section 22(a)(1) of the CEA, 7 U.S.C. § 25(a)(1).

74.     Defendants are liable to Plaintiff and members of the Class for the damages the members of the class sustained as a result of Defendants' CEA violations.

## COUNT THREE

## VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT

75.     Plaintiff incorporates by reference the preceding allegations as if fully set forth.

76.     Beginning at least as early as June 1, 2008, and continuing until at least March 31, 2010, defendants and their co-conspirators engaged in a continuing agreement, understanding, or conspiracy in restraint of trade to artificially fix, maintain, suppress, and/or stabilize the prices of COMEX silver futures and options contracts in violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act.

77.     During the Class Period, defendants possessed market power in the market for COMEX silver futures and options contracts.

78.     The conspiracy consisted of a continuing agreement, understanding or concerted action between and among defendants and their co-conspirators in furtherance of which defendants fixed, maintained, suppressed and/or made artificial prices for COMEX silver futures and options contracts.  Defendants' conspiracy is a *per se* violation of the federal antitrust laws.

79.     For the purpose of formulating and effectuating the contract, combination, or conspiracy, defendants and their co-conspirators engaged in the following anticompetitive activities, the purpose and effect of which were to fix, maintain, suppress and otherwise unlawfully manipulate the price of COMEX silver futures and options contracts:

(a)     Participated in meetings and/or conversations to unlawfully discuss the price of COMEX silver futures and options contracts;

(b)     Agreed during those meetings and conversations to unlawfully sell COMEX silver futures contracts in order to drive down the price of COMEX silver futures contracts and otherwise to depress or unlawfully manipulate the prices of COMEX silver futures and options;

(c)     Communicated to one another their intention to depress or otherwise unlawfully manipulate the prices of COMEX silver futures and options contracts and colluded with one another in achieving this unlawful and anticompetitive purpose; and

(d)     Pursuant to such an unlawful conspiracy in restraint of trade, knowingly and collusively traded in order to depress or otherwise unlawfully manipulate the price of COMEX silver futures and options contracts.

80.     Defendants' conspiracy, and resulting impact on the market for COMEX silver futures and options contracts, occurred in or affected interstate and international commerce.

81.     Defendants' anticompetitive conduct has caused Plaintiff and other members of the Class who traded COMEX silver futures and options contracts during the Class Period to trade at artificially determined prices that were suppressed as a result of defendants' unlawful conduct. As a consequence thereof, Plaintiff and the Class suffered financial losses and were, therefore, injured in their business or property.

82.     As a proximate result of defendants' unlawful conduct, Plaintiff and members of the Class have suffered injury to their business or property.

83.     Plaintiff and members of the Class are each entitled to treble damages for the violations of the Sherman Act alleged herein.

## RELIEF SOUGHT

Accordingly, Plaintiff demands relief as follows:

A.      That the Court determine that this action may be maintained as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be appointed as the representative for the Class and Plaintiff's counsel be appointed as counsel for the Class;

B.      That the unlawful conduct alleged herein be adjudged and decreed to be a violation of the CEA;

C.      That Plaintiff and the Class recover damages, as provided under the CEA, together with prejudgment interest;

D.      That the unlawful conduct alleged herein be adjudged to be a *per se* violation of Section 1 of the Sherman Act;

E.   That Plaintiff and the Class recover damages, as provided under federal antitrust law, and that a joint and several judgment in favor of Plaintiff and the Class be entered against defendants in an amount to be trebled in accordance with such laws;

F.   That Plaintiff and the Class recover their costs of the suit, including attorneys' fees, as provided by law; and

G.   That the Court direct such further relief it may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: November 12, 2010                    Respectfully Submitted,

                                            By: _Gregory K. Arenson_
                                            Robert N. Kaplan (RK-3100)
                                            Gregory K. Arenson (GA-2426)
                                            Jason A. Zweig (JZ-8107)
                                            KAPLAN FOX & KILSHEIMER LLP
                                            850 Third Ave, 14th Fl.
                                            New York, N.Y. 10022
                                            Phone: (212) 687-1980
                                            Fax: (212) 687-7714
                                            Email: rkaplan@kaplanfox.com
                                                     garenson@kaplanfox.com
                                                     jzweig@kaplanfox.com


                                            David H. Fink (P28235)
                                            E. Powell Miller (P39487)
                                            The Miller Building
                                            950 West University Drive, Suite 300
                                            Rochester, MI 48307
                                            Tel.: (248) 841-2200
                                            Fax: (248) 652-2852
                                            Email: dhf@millerlawpc.com
                                                     epm@millerlawpc.com

                                            *Attorneys for Plaintiff Tekoa Da Silva*